<pre>
 1                  IN THE UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF MISSOURI
 2                           WESTERN DIVISION

 3
       UNITED STATES OF AMERICA,        )
 4                                       )
                        Plaintiff,       )   No. 15-00043-01-CR-W-BP
 5                                       )   March 17, 2017
                  V.                     )   Kansas City, Missouri
 6                                       )   CRIMINAL
       ROBERT C. CALDWELL,               )
 7                                       )
                        Defendant.       )
 8                                       )

 9

10

                        TRANSCRIPT OF RESENTENCING
11
                    BEFORE THE HONORABLE BETH PHILLIPS
12                      UNITED STATES DISTRICT JUDGE

13          Proceedings recorded by electronic stenography
                     Transcript produced by computer
14

15                            APPEARANCES

16
       For Plaintiff:              MR. DAVID M. KETCHMARK
17                                 Assistant U.S. Attorney
                                   400 E. 9th Street, 5th Floor
18                                 Kansas City, MO 64106

19     For Defendant:              MR. ROBERT GLEN KUCHAR
                                   Assistant Federal Public Defender
20                                 818 Grand Boulevard, Suite 300
                                   Kansas City, MO 64106
21

22

23

24

25


                        Kathleen M. Wirt, RDR, CRR
                        United States Court Reporter
                  400 E. 9th Street * Kansas City, MO 64106
</pre>

I N D E X

| GOVERNMENT'S EXHIBITS | OFFERED | ADMITTED |
|---|---|---|
| 7 - certified copy of Greene County conviction | 7 | 8 |

1   MARCH 17, 2017

2                  - - -

3          THE COURT:  Good morning.  We're here in the case of

4   United States of America versus Robert Caldwell, Case No.

5   15-43.  Could counsel please enter their appearance?

6          MR. KETCHMARK:  Your Honor, David Ketchmark on

7   behalf of the United States.

8          THE COURT:  Thank you.

9          MR. KUCHAR:  Your Honor, Robert Caldwell appears in

10  person and with his attorney, Bob Kuchar.  Good morning, Judge.

11         THE COURT:  Thank you.  Mr. Caldwell, what we're

12  going to do today is have somewhat of an abbreviated version of

13  the original sentencing that we had in this case.  I will have

14  a conversation with the attorneys regarding how to calculate

15  the sentencing guidelines in light of some recent both, I

16  guess, United States Supreme Court and Eighth Circuit opinions.

17  I then will hear argument from the attorneys regarding what

18  sentence they believe I should impose.  And then, once again,

19  as I did last time, I will ask that you come to the podium, and

20  I'll give you an opportunity to make a statement, if you wish,

21  before I actually decide the sentence.

22         I know I asked you this before, but out of an

23  abundance of caution, let me ask you again.  You've read the

24  presentence report in this case?

25         THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And you discussed it with your attorney?

2    THE DEFENDANT:  Yes.

3    THE COURT:  And have you also discussed with your

4  attorney the reason that we're here today and the objections

5  that he's lodged to the presentence report, in light of the

6  Supreme Court opinion?

7    THE DEFENDANT:  Yes, Your Honor.

8    THE COURT:  Other than the objections that your

9  attorney has lodged, is there anything else in the report that

10  you think is wrong?

11    THE DEFENDANT:  No, ma'am.

12    THE COURT:  Anything that needs to be changed?

13    THE DEFENDANT:  No, ma'am.

14    THE COURT:  Okay.  Then let's take up differing

15  opinions as to what guideline I should use.

16    Mr. Kuchar, it seems to me that the statute cited by

17  the government, 18 U.S.C. 3742(f) and (g), do require that I

18  apply the guidelines that were in effect at the time of the

19  original sentencing.  What is your position on that issue?

20    MR. KUCHAR:  Judge, I do agree that that's what the

21  statute does call for, that you apply the guidelines at the

22  time of the original sentencing.

23    THE COURT:  Okay.  And given the fact that the

24  residual clause was in effect at the time of the guidelines,

25  then do you agree that the guidelines were properly calculated

1  at the time of the original sentencing?

2          MR. KUCHAR:  Well, we agreed with the third addendum

3  to the presentence investigation.  We filed a sentencing

4  memorandum and an objection to the government's objection to

5  that memorandum.  So we do think the guidelines should be 325

6  to 405 months.

7          THE COURT:  With a Criminal History Category of VI?

8          MR. KUCHAR:  With a Criminal History Category of V.

9          THE COURT:  So even though the guidelines in effect

10  at the time of the original sentencing provided for a robbery

11  in the second degree to be a crime of violence under the

12  residual clause, you don't think I should apply that at this

13  sentencing?

14          MR. KUCHAR:  Just for the record, Judge, we did file

15  again an objection to the memorandum, arguing that robbery in

16  the second degree should not apply under the residual clause

17  also.

18          THE COURT:  Okay.

19          MR. KUCHAR:  I don't have anything to add to that.

20  I think to the extent that we were able to, we thoroughly

21  stated our position.  And I called that Defendant's Second

22  Sentencing Memorandum, and that was filed on March 9th --

23          THE COURT:  Right.

24          MR. KUCHAR:  -- of 2017.

25          THE COURT:  Okay.  And I do have that.  I just

1  wanted to make sure that I understood your position on this

2  issue.

3        Mr. Ketchmark, do you have any record you'd like to

4  make at this point?

5        MR. KETCHMARK:  No, Your Honor.  I think we set

6  forth in our response to the objections, in light of the

7  *Beckles* opinion, and we also addressed in the supplemental

8  sentencing memorandum that we filed that's in response, I

9  think, to the objections of Mr. Kuchar, and we would simply

10 stand on the arguments as presented in those two documents.

11       MR. KUCHAR:  If I might, just to --

12       THE COURT:  Of course.

13       MR. KUCHAR:  -- make my record here.  When you're

14 considering our position, just for the record, I'd like to

15 incorporate the arguments advanced both in the original

16 objections to the PSI, my first sentencing memorandum filed on

17 June 24th of 2016 entitled Defendant's Sentencing Memorandum,

18 and then the document that I just made reference to, which is

19 entitled Defendant's Second Sentencing Memorandum dated March

20 9, 2017.  So essentially there are three different versions of

21 our approach.  I think I'd like to incorporate all of those

22 just for the record.

23       THE COURT:  Sure.  Well, taking up your, what's been

24 titled as the second sentencing memorandum, your first argument

25 is that the government cannot prove that Mr. Caldwell's prior

1  conviction was a crime of violence as a matter of law because

2  it failed to offer any evidence of this conviction at the

3  original sentencing hearing.

4        First of all, I agree with the government's argument

5  that I don't see any limitation on the government offering any

6  evidence on this issue, but I continue to think that it is not

7  necessary.  I think that what Mr. Caldwell was convicted of is

8  not in dispute and, therefore, any evidence of the conviction

9  is not necessary.

10        With that, does the government wish to submit any

11 evidence on this issue?

12        MR. KETCHMARK:  Your Honor, we do have marked, and

13 we had marked at the first sentencing hearing, Government's

14 Exhibit No. 7, and that is a attested-to and certified copy of

15 those Greene County convictions.  I guess to supplement the

16 record, just to be clear, I agree with the Court's assessment

17 that it's not necessary under the categorical approach, but I

18 would offer that certified copy because it's clear that those

19 documents, the Shepard documents, although not necessary,

20 clearly would qualify this is a crime of violence.

21        THE COURT:  I assume you object to these.

22        MR. KUCHAR:  I do.  If I could just object.  Again,

23 in the memorandum, we did talk about the cases that talk about

24 the one opportunity the government has to present evidence.  So

25 I'm not going to kind of repeat that too much, but I want to

1  make sure that we have a continuing objection.

2          THE COURT:  Sure.  No, you do have a continuing

3  objection to that.  Again, I don't believe that these are

4  necessary, but in the event that this issue comes up in front

5  of the Eighth Circuit, Government's Exhibit 7 will be admitted.

6          (Government's Exhibit 7 was admitted into evidence.)

7          THE COURT:  The next argument is that the *Beckles*

8  decision does not apply to this case, again, dealing with the

9  analysis of whether or not robbery in the second degree is

10  considered a crime of violence.  Mr. Kuchar, do you have any

11  additional argument that you wish to make on this issue?

12         MR. KUCHAR:  No.  Again, the record should reflect

13  that the second sentencing memorandum has about a five or

14  six-page discussion on that issue.  I don't have anything else

15  to add.

16         THE COURT:  Okay.  Any record you wish to make?

17         MR. KETCHMARK:  No, Your Honor.

18         THE COURT:  Okay.  So for the reasons I previously

19  stated, that objection will be overruled, and I do find that

20  under the guidelines that were in effect at the time of the

21  original sentencing, that robbery in the second degree is

22  considered a violent felony and, therefore, the four points

23  that were given in Paragraph 40 were appropriate.

24         Mr. Kuchar, any additional record that -- objection

25  or record that you want to make on this issue?

1          MR. KUCHAR:  No, Your Honor.

2          THE COURT:  Does the government have any objection?

3          MR. KETCHMARK:  No, Your Honor.  Just so I'm clear

4   and the record is clear, the Court referenced the residual

5   clause when it was talking about its analysis.  Is the Court

6   making a finding that it's under the residual clause as the

7   basis that those would qualify as a crime of violence?  Or is

8   it the force clause, or is it either or both?

9          THE COURT:  I think it's both.  Under the guidelines

10  that were in effect at the time of the original sentencing, the

11  2015 guidelines, it most certainly would be a crime of violence

12  under the residual clause, and I believe it was also an

13  enumerated offense under the force clause.  Is that correct,

14  Mr. Ketchmark?

15         MR. KETCHMARK:  I don't believe it was an enumerated

16  offense under the force clause, Your Honor.  The guidelines

17  would have read that the crime of violence means any offense

18  under federal or state law punishable by imprisonment for a

19  term exceeding one year, under (1) that that has as an element

20  the use, attempted use or --

21         COURT REPORTER:  Could you please slow down?

22         MR. KETCHMARK:  Yes, I'm sorry.

23         COURT REPORTER:  And start over?

24         MR. KETCHMARK:  The guidelines in effect would have

25  read under (a), (quoted as read) "The term crime of violence

1  means any offense under federal or state law, punishable by

2  imprisonment for a term exceeding one year, that (1) has the

3  element the use, attempted use, or threatened use of physical

4  force against the person of another, or, second, is a burglary

5  of a dwelling, arson, or extortion, involves the use of

6  explosives, or otherwise involves conduct that presents a

7  serious potential risk of physical injury to another."  The

8  residual clause.  And then the Commentary Notes, Application 1,

9  does specifically list an enumerated felony as being robbery.

10         So the government believes it could apply under

11  both, but just for purposes of the appellate record, Your

12  Honor, I wanted to make clear what the Court's rationale was.

13  And if the Court wishes, here is a copy of the guidelines

14  that --

15         THE COURT:  I have -- I brought the 2015 book out

16  with me.  I think under the dicta in *Bell*, 840 F.3d 963, it

17  would be considered a crime of violence because robbery is

18  expressly enumerated as a crime of violence in the commentary

19  to the guidelines' career offender provisions.  Again, *Bell* was

20  talking about a guideline that was not in effect at the time of

21  Bell's sentencing.

22         Mr. Kuchar, is there any -- you kind of have a look

23  on your face that maybe you want to weigh in on this issue.

24         MR. KUCHAR:  If I might, Judge, we would just state

25  on behalf of Mr. Caldwell that we believe that robbery in the

second degree is not an enumerated offense, though, under --
you know, sometimes they refer to 18 United States Code 924(e),
say the analysis is the same between that and the guidelines.
Of course, robbery is not an enumerated offense under that
statute.  It's also our position that it's not an enumerated
offense under the specific guideline provision that Mr.
Ketchmark just read to you.  It's burglary, extortion, and
arson.

You know, in adopting the commentary, I would, of
course, note that there's a distinction between the text of the
guidelines, which is more able to be relied upon than there is
the commentary.  I would also comment that we're talking here
about robbery in the second degree, and in my arguments I do
make a distinction between a generic robbery and robbery in the
second degree.  I don't think I need to repeat our position on
that, but I would just kind of mention that because you asked
about enumerated offenses, and we do believe that robbery in
the second degree is not a generic offense.  In other words,
robbery in the second degree is not enumerated, even in the
commentary to the guideline section attempting to define crimes
of violence.

Finally, Judge, we would note that *Bell* and
pre-*Beckles* would stand for the proposition that robbery in the
second degree is not a crime of violence under the force
clause.  I don't think -- my client's position is that hasn't

1  changed any.  The government conceded that when this appeal was

2  pending, and that position has not changed.  So we would make

3  the argument, anyway, that consistently throughout *Bell*

4  forward, that, either way, robbery in the second degree is not

5  a crime of violence under the force clause.  We don't think

6  that robbery in the second degree rises to the level of a crime

7  of violence in the residual clause either because we're taking

8  a position that it's different from generic robbery, which

9  would be robbery in the first degree in Missouri.  So that's

10 what I wanted to clarify.

11          THE COURT:  Okay.  Thank you.  Mr. Ketchmark?

12          MR. KETCHMARK:  The only thing I would supplement,

13 Your Honor, would be -- obviously, we refer the Court to our

14 pleadings.  But I think it's clear under *Beckles* that there's

15 no question that the commentary is good.  And as the Court in

16 *Bell* even acknowledged that the First Circuit in the

17 *Soto-Rivera* case talked about it can serve as a hook to

18 basically bring in -- the residual clause can serve as a hook

19 to bring the commentary in, so I don't think there's any

20 dispute in light of *Beckles* and the validity from a

21 constitutional basis of the residual clause that robbery in the

22 second degree is enumerated in the commentary.  It's clearly a

23 crime of violence under that provision.  I think there's an

24 argument to be made that it could qualify under the force

25 clause, but I think it's redundant because there's no question

1    it is in under the residual clause.  And that's the only thing
2    I wanted to make clear from the record.  If the Court was in
3    agreement with the position as to that, no question as to the
4    residual, and it's also arguably applicable under the force
5    clause, as well.

6           THE COURT:  Yeah, I -- I understand your need to
7    make a record here, and I have no problem with your need to
8    make a record.  I'm not real sure how important this really is.

9           In the event that I'm wrong and this does carry some
10   weight, I do believe that, when looking at *Beckles* and *Bell* and
11   the commentary in 4B1.2 that was in effect at the time of the
12   original sentencing, that the robbery in the second degree is a
13   crime of violence, not only under the force clause -- not only
14   under the residual clause, but also under the force clause.

15          Is there any other objection or issues that I need
16   to take up with respect to the calculation of the guidelines?

17          MR. KUCHAR:  No, Your Honor.

18          MR. KETCHMARK:  And the only thing I would say, Your
19   Honor, and Mr. Kuchar referred to it, I assume the Court is
20   taking judicial notice of all of the prior objections, all of
21   the prior testimony, and all of the prior rulings on those
22   objections.  And so, obviously, in light of that assumption,
23   there's nothing further from the government.

24          THE COURT:  Okay.  Yes, I have reviewed the docket
25   in this case.  I've read most of the, if not all of the,

1   previous filings, and those are being considered, and any

2   objections in those are being preserved.

3       I, therefore, find, then, that the guidelines are

4   calculated in the same way they originally were, which is a

5   total offense level of 37, a Criminal History Category of VI,

6   and a guideline range of 360 to life, plus 84 consecutive on

7   Count Four.

8       With that, Mr. Ketchmark, do you have any

9   additional -- or any evidence or argument that you wish to make

10  with respect to the appropriate sentence?

11      MR. KETCHMARK:  Just briefly, Your Honor.  And I

12  would note for the record, and I neglected to do so,

13  Mr. Orrison, the victim in this matter, and his wife is here,

14  as well as the case agents from the original case.

15      Your Honor, I think that in looking back at the

16  record that the Court made at the first sentencing hearing, it

17  is clear, at least from the government's point of view, that

18  when the Court was arriving at the total sentence of 45 years,

19  the Court was considering the advisory guideline range, but I

20  think the Court even told this defendant that that's the

21  starting spot, and that the Court then needed to go through the

22  analysis under the 3553 factors and set forth why the Court

23  believed the need to protect society from this individual, if

24  he ever should be released, was a valid factor and a valid

25  concern.  In fact, the Court spent a significant amount of time

1  talking about calculating how old he would need to be before
2  the other Mr. Caldwell didn't show up, the one who committed
3  these horrific crimes.

4          The Court also went through, I think, a very
5  detailed analysis of the nature and circumstances of the
6  horrific nature of this crime.  The Court also talked at length
7  about the nature and circumstances of this individual and how
8  he started his crime activities at a very young age, and they
9  continued to escalate.

10          The Court also heard testimony in the first
11 sentencing hearing from Special Agent Jason Ramsey with the
12 FBI, who talked about the confession that this defendant made
13 where he admitted the criminal activity that he engaged in in
14 Kentucky and Indiana and that it was just all a continuation
15 from what started here in Missouri, and that was uncontested
16 testimony.  There was no questioning on cross-examination.  So
17 by his very own admissions to the FBI, this is an individual
18 who has engaged in criminal conduct, and it's been escalating
19 ever since he was certified for the crimes he committed when he
20 was 16.

21          And I think that all of the rationale that the Court
22 provided in arriving at that determination of 45 years was
23 sound in the sense that I believe that -- obviously, if you
24 recall, we were arguing for a life sentence.  And I'm not here
25 standing before you asking for a life sentence, but I'm asking

1  for you to impose the exact same sentence that you did before,

2  and you imposed a sentence that totals out to 45 years to be

3  sure that Mr. Caldwell, if he is released, is released at a

4  time when he's not going to be likely to reoffend because no

5  one should have to sit in a courtroom like the Orrisons here

6  based on crimes that they've suffered at his hand.

7  THE COURT:  Thank you.  Mr. Kuchar?

8  MR. KUCHAR:  Do you want me to stand up there?

9  THE COURT:  Wherever you're most comfortable.

10  MR. KUCHAR:  Judge, as I indicated earlier, I, of

11  course, asked you on the record to consider the sentencing

12  memorandum filed on June 24th.  I'm going to make some of those

13  comments again because we just heard some comments in support

14  of a 45-year sentence.

15  Basically what I said back at our last sentencing

16  hearing, I think it was on June 30th, I asked for a sentence on

17  behalf of my client in the neighborhood of 22 years.  Of

18  course, you disagreed with that and imposed a sentence of -- as

19  you know, a sentence of 45 years.  The same request we're

20  making today, that you consider the sentencing factors under

21  3553(a) and arrive at a sentence considerably less than both

22  the guidelines and what you previously imposed.  We would

23  suggest a sentence of 45 years, or 540 months, would be

24  excessive, unreasonable, and greater than necessary to satisfy

25  the sentencing scheme of 3553(a).

1    Like I said last time we were here, and like Mr.
2    Caldwell acknowledged both when he was interviewed after his
3    arrest, at his change of plea -- frankly, from the first day
4    that I met him, he's had no dispute, you know, of the factors
5    concerning the offense. And I don't want to make anyone think
6    today that by making these comments he's trying to undermine
7    that. I am suggesting, though, that a sentence of 45 years
8    plus the idea that he faces, you know, charges that were
9    discussed here just now in Kentucky and Indiana -- I know he
10   has a trial in Kentucky, so he has to deal with those -- that
11   case also, is unreasonable, and it's pretty much the equivalent
12   of, you know, a life sentence.

13   So one of the things I talked about last time, and
14   I'm just going to -- at the risk of unnecessary redundancy
15   here, I'm going to remind the Court that while he does, Mr.
16   Caldwell does have a number of convictions for, you know,
17   robbery type things out of Greene County, Missouri, it's
18   worthwhile to point out that that was one case. That was one
19   case, and I believe all of those events occurred within a
20   24-hour time frame. Now, they're serious, but they also
21   happened over ten years ago when Mr. Caldwell was 16 years old.
22   So I think that you can consider -- I mean, the way that the
23   guidelines kind of went up, in large part, was because of all
24   of these disputes about whether -- I mean, they're, obviously,
25   not a very good thing to do, for lack of a better term. But I

1  think you can consider his age and how old the offense is when
2  you apply how much relevancy you want to apply to that.

3       Other than that situation, he does not have any
4  other felony convictions for crime of violences, by anyone's
5  standards.  I think the ones remaining are forgery and fleeing,
6  which also occurred within a few weeks of each other when Mr.
7  Caldwell was 18 years old.

8       So, you know, the idea that he's demonstrated an
9  entire life of criminal activity, I would disagree with that,
10  and I would suggest that the crimes of violence, again, were
11  when he was 16, and that's pretty young and quite a while ago.

12       As far as the facts and circumstances of the case
13  are concerned, we know all about that.  We're not going to make
14  any attempt to minimize that, except to tell you that he was
15  under the influence of methamphetamine when the situation
16  occurred.  He did accept full and complete responsibility, and
17  you heard about it when he was interviewed, and he continues to
18  do that today.

19       I do think also a 45-year sentence -- we talked
20  about this a little bit with the Eighth Circuit in our, you
21  know, our opening brief -- would constitute a sentencing
22  disparity to the extent that the average sentence for this type
23  of offense is considerably less than 45 years.

24       So for all of those reasons, Judge, we're going to
25  ask you to adopt our reasoning in our sentencing memorandum

1  filed on June 24th of 2016.

2          THE COURT:  Thank you.

3          MR. KUCHAR:  Thank you.  Oh, Judge, if I could

4  mention -- I'm sorry.

5          THE COURT:  Sure.

6          MR. KUCHAR:  I meant to say that I admitted Exhibits

7  1 and 2, the character letters.  There were a number of them,

8  and they were pretty heartfelt, and I would just ask you to

9  reconsider those.  I wanted to make sure the record is

10 straight.

11         THE COURT:  Yes, I have reviewed those again.

12         Mr. Caldwell, could you and your attorney please

13 come to the podium here?

14         (So done.)

15         THE COURT:  Sir, again, I've reviewed the sentencing

16 transcript from the original sentencing, but I don't say that

17 to in any way suggest you shouldn't make a statement.  I just

18 want to let you know that I do recall the statement that you

19 made previously.  But before I decide again what sentence to

20 impose, is there anything that you wish to say?

21         THE DEFENDANT:  Well, yes.  Your Honor, I just want

22 you to know that Mr. Ketchmark really, I mean, he hit it on the

23 nose.  Since day one, I've accepted responsibility.  And I know

24 my case is --

25         MR. KUCHAR:  You meant Mr. Kuchar.

1    THE DEFENDANT:  Well, no, Ketchmark because he said

2  that I did --

3    MR. KUCHAR:  I'm sorry.

4    THE DEFENDANT:  -- confess to my crimes.  And I did

5  ever since.  I mean, I accepted the plea, I didn't go to trial,

6  and I still get 45 years.  And it kind of confused me.

7  Actually, Miss Phillips, on June 30th I almost gave up.  You

8  know, I'm not looking for sympathy.  I know what I did, and I'm

9  fully remorseful to Mr. Orrison, and I'm sorry to your wife.

10  I'm sorry.  I mean, I know what I did was wrong, and it is.

11    But, Your Honor, I remember you told me you didn't

12  have a glass ball at my sentencing, and neither do I.  But I

13  know I'm the youngest person in this courtroom today, and in 45

14  years, I wonder if anybody else in this courtroom will be

15  living besides me.

16    And that's a long time, Your Honor, and I really do

17  want to change and be rehabilitated and maybe take the

18  Challenge Program or certain programs that I've seen that BOP

19  offers, and maybe one day I can become a better man.  But Miss

20  Phillips, what's left of me after 45 years?  But I know you

21  have a job to consider.  I know you do.

22    I know you have people sit on the stand, and you

23  probably look at individuals like me every day.  But today was

24  the first time that Mr. Kuchar has ever offered an excuse for

25  my crimes.  He used methamphetamine today, and that's not

mentioned in my first transcripts. I never once mentioned an
excuse for my crimes. I stood up here, and I took full
responsibility. And I have.

And no leniency is deserved, and I understand that.
But I just ask you, is this 45 too much, Miss Phillips? And if
you feel any sympathy in your heart or leniency in your heart,
I ask you to have mercy on my soul and my life.

Mr. Orrison, to you and your wife, I'm sorry, and I
hope you all can move on after today and we don't have to come
back to Court. And that's all I have to say, Your Honor.

THE COURT: Well, sir, I have put a lot of thought
into the appropriate sentence. I put a lot of thought into it
at the original sentencing; and since this sentencing hearing
has been reset, I've gone through the thought process again to
great length.

And you mentioned that -- a suggestion that maybe I
see a lot of people like you in front of me. I don't. This is
a really exceptional case, and it's not exceptional in a good
way. When I originally decided the sentence, I put a lot of
weight into two factors, or two points. No. 1, just the
heinous nature of this crime, the fact that it was very -- just
depraved is the only word that I can come close enough to fit.

And the fact that you were on methamphetamine really
doesn't play one way or the other into that fact. The fact
that, you know, maybe meth would cause you to do this, it's not

a factor to your benefit or against you because meth is always
going to be available.  And so if I do release you at a time in
less than 45 years, there's still going to be some substance
out there that could cause you to commit a similar act if it
was the meth that caused you to do it.  I question that because
of the second factor that I put a lot of weight on in deciding
this sentence, and that was the robbery spree that you went
through in Springfield.

And I've concluded that I would have come to a
conclusion that a 45-year sentence is appropriate, regardless
of how many points you received for that crime spree,
regardless of whether or not robbery in the second degree is a
crime of violence under either the residual clause or the force
clause because the incident back in 2006, as I said before, set
the stage.  And then when you go out and commit this crime, I
do see it as a pattern and I see it as getting worse.

The facts are that with at least five different
individuals within a 12-hour period, you and your defendants
pointed guns at individuals and stole money, cell phones, keys,
and the like.  I don't care if the Eighth Circuit or the
Supreme Court or any other entity gives these a title of crimes
of violence.  They are.  They're violent.  And you have not yet
killed someone, but every incident that I've seen from 2006 to
this crime tells me that you've come that close to actually
killing someone.

1          And so when I look at your history and

2   characteristics and the nature and circumstances of this

3   offense, and I do so for a second time, I come to the same

4   conclusion.  I just don't believe that I would be doing my job

5   to protect the community if I sentence you to anything less

6   than 45 years.  I recognize how you see this as unfair because

7   you accepted responsibility, and this is one of the rare

8   circumstances where in federal court accepting responsibility

9   is not necessarily going to result in a lower sentence.  I just

10  truly believe that the threat to the community is too great to

11  take that risk.

12          So for that reason, the original sentence will be in

13  place:  465 months on Count One and Two, 300 months on Count

14  Three, 120 months on Count Five.  Those will run concurrent to

15  the 84-month sentence on Count 54 -- or excuse me, on Count

16  Four, for a total sentence of 540 months.

17          When you're released from the custody of the Bureau

18  of Prisons, I'm going to place you on supervised release,

19  again, for a period of ten years.  The conditions of supervised

20  release that we already discussed were on Page 21, Paragraph

21  79.  Mr. Caldwell, do you have any questions about those

22  conditions?

23          THE DEFENDANT:  No, ma'am.

24          THE COURT:  Again, a special assessment in the

25  amount of $500 will be imposed.

1          Mr. Ketchmark, should the judgment contain any other

2   information?

3          MR. KETCHMARK:  Not that I can think of, Your Honor.

4          THE COURT:  Mr. Kuchar, is there any request

5   regarding placement or otherwise?

6          MR. KUCHAR:  Not at the moment, Judge.

7          THE COURT:  Sir, you -- yes?

8          PROBATION OFFICER:  I'm not sure.  Did you mention

9   465 months on the counts?  I think it's -- is it 456 months on

10  Counts One and Two?

11         THE COURT:  I must have written it down wrong.  Yes.

12  456 months on Counts One and Two.  Yes.  Thank you.

13         PROBATION OFFICER:  And total supervised release is

14  five years?

15         THE COURT:  Five years?

16         COURTROOM DEPUTY:  It's on the other page, Your

17  Honor.

18         THE COURT:  Oh, yeah, five years.  I should have

19  read the judgment.  That's one document I didn't read.

20         So, yes, it's, again, a total sentence of 540

21  months.  The sentence will be 456 months on Counts One and Two,

22  300 months on Count Three, 120 months on Count Five.  Those to

23  run concurrent to one another and consecutive to the sentence

24  of 84 months on Count Four.  Supervised release will be for a

25  period of five years.

1              Any other record that needs to be made?

2              Sir, you again have the right to appeal this

3  sentence, but in order to do so, you have to file a notice of

4  appeal within 14 days of the date of the judgment in this case.

5  If you do not file a notice of appeal within 14 days, then you

6  will forever lose your right to appeal the sentence.  Do you

7  understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  If you choose to appeal, Mr. Kuchar can

10 file the notice of appeal or the Clerk of Court can file the

11 notice of appeal.

12             Mr. Ketchmark, is there anything further on the part

13 of the government?

14             MR. KETCHMARK:  No, Your Honor.

15             THE COURT:  Mr. Kuchar, anything on behalf of Mr.

16 Caldwell?

17             MR. KUCHAR:  No, Your Honor.

18             THE COURT:  Mr. Caldwell, good luck.

19             (Hearing adjourned.)

20                         - - -
                       CERTIFICATE
21             I certify that the foregoing is a correct transcript
   from the record of proceedings in the above-entitled matter.
22

23  April 13, 2017

                              /s/_____
24                            Kathleen M. Wirt, RDR, CRR
                              U.S. Court Reporter
25